Argued and submitted January 10, 2000, affirmed January 17, 2001

# John ROSENTHAL,
*Appellant,*

*v.*

# Jerry ERVEN,
*Respondent,*

*and*

# INTERNATIONAL CHURCH OF THE FOUR SQUARE GOSPEL,
*Defendant.*

(9804-02696; CA A106225)

17 P3d 558

Mark McCulloch argued the cause for appellant. With him on the briefs was Powers, McCulloch & Bennett, LLP.

Ralph C. Spooner argued the cause for respondent. With him on the brief was Dan R. Schanz.

Before Landau, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

This is an action for intentional infliction of emotional distress (IIED) brought against defendant, who became sexually involved with plaintiff's wife. The trial court granted summary judgment in favor of defendant. Plaintiff appeals and assigns error to that ruling. We review the trial court's entry of summary judgment to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997). We state the facts and all reasonable inferences to be derived from the facts in the light most favorable to plaintiff, the nonmoving party. *Id.* For the reasons that follow, we affirm the trial court's ruling.

The material facts are not in dispute. Plaintiff and his now-former wife were married and had two children. In 1996, plaintiff's wife worked as a receptionist for the preschool at the church that her family attended; later, she became the church's scheduling coordinator. In that subsequent capacity, plaintiff's wife worked closely with defendant, who also was employed by the church and was married with children. Plaintiff's and defendant's families occasionally socialized together.

In April 1997, plaintiff's wife consulted with an attorney for information regarding legal separation after plaintiff's second arrest for DUII. At plaintiff's wife's urging, she and plaintiff sought marital counseling from pastors affiliated with their church, which they had also done in 1993. In early May, plaintiff's wife became sexually involved with defendant, meeting him a few times at her house while plaintiff was away. Plaintiff's wife told plaintiff about the relationship later that month, and they separated in July. At one point after the relationship began, plaintiff approached defendant at his home and requested that defendant discourage plaintiff's wife from continuing the relationship with defendant. During that summer, plaintiff's wife discovered that she was pregnant with defendant's child and, in the fall, she filed for a marital dissolution. Meanwhile, defendant reconciled with his wife after a separation, and the relationship between defendant and plaintiff's wife ended that winter.

Plaintiff brought this action for IIED against defendant,[1] alleging that defendant intentionally engaged in outrageous conduct—*i.e.*, conduct that was an extraordinary transgression of the bounds of socially tolerable behavior—that caused plaintiff severe emotional distress. *See McGanty v. Staudenraus*, 321 Or 532, 543, 550-51, 901 P2d 841 (1995). Defendant moved for summary judgment, arguing that plaintiff's claim failed as a matter of law for three reasons: (1) defendant's conduct in the extramarital relationship was not directed at plaintiff; (2) any emotional distress suffered by plaintiff was not severe; and (3) defendant's conduct was not outrageous. The trial court granted defendant's motion, concluding that his conduct here was not "so far beyond the bounds of social toleration that it should be actionable in a court of law." On appeal, plaintiff challenges that conclusion.

■ With respect to the outrageousness element of IIED, we review to determine whether the conduct constitutes an "extraordinary transgression of the bounds of socially tolerable conduct." *Franklin v. PCC*, 100 Or App 465, 469, 787 P2d 489 (1990). Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances. *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994). We consider whether the offensiveness of the conduct "exceeds any reasonable limit of social toleration[,]" which is "a judgment of social standards rather than of specific occurrences." *Hall v. The May Dept. Stores*, 292 Or 131, 137, 637 P2d 126 (1981).

■■ The *Restatement (Second) of Torts* and treatises use terms such as "outrageous" and "extreme" to describe conduct actionable as IIED, but the facts of decided cases convey more than adjectives do to guide our analysis of this element. Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. *Williams v. Tri-Met*, 153 Or App 686, 689-90, 958 P2d 202 (1998); *Erickson v. Christenson*, 99 Or App 104, 107, 781 P2d 383, *rev*

---

[1] Plaintiff also brought claims against the employer church on various theories. All of those claims were ultimately dismissed and are not before us on appeal.

24

*dismissed* 311 Or 266 (1989). Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. *See Checkley v. Boyd*, 170 Or App 721, 14 P3d 81 (2000). The setting in which the allegedly outrageous conduct occurs—for example, in a public venue or within the employment context—also can bear on the degree of offensiveness of the conduct. *See, e.g., Hall*, 292 Or at 137; *Trout v. Umatilla Co. School Dist.*, 77 Or App 95, 102, 712 P2d 814 (1985).

■     It is helpful to our analysis here to consider an earlier decision of this court regarding an IIED claim within the familial context. In *Hetfeld v. Bostwick*, 136 Or App 305, 901 P2d 986 (1995), the plaintiff alleged that his former wife and her current husband engaged in a course of conduct designed to estrange him from his children. The alleged conduct included, among other acts, withholding visitation, assaulting the plaintiff in his children's presence, disparaging his character and reputation, encouraging the children to call the plaintiff by his first name, and causing the children to be known by the stepfather's last name rather than by the plaintiff's. This court affirmed the trial court's dismissal of the complaint, noting that, although unfortunate, the contentious conduct was not uncommon in the context of an acrimonious divorce and that "[i]t is not 'outrageous in the extreme' to behave as people commonly behave in certain circumstances." *Id.* at 310-11.

This case involves similarly unfortunate but not uncommon behavior. Viewing the facts in the light most favorable to plaintiff, the nonmoving party, the record presents this scenario: Defendant entered a consensual extramarital relationship with a coworker, plaintiff's wife. They continued that relationship for some months despite plaintiff's appeal to defendant to discourage plaintiff's wife from doing so. The relationship resulted in a pregnancy, and plaintiff's wife ultimately left her marriage with plaintiff. The question that this case presents is whether, in light of the circumstances, a reasonable jury could find that defendant's conduct was an extraordinary transgression of the bounds of socially tolerable conduct.

The reality is that the circumstances here are far from extraordinary. When a marital relationship breaks down, a common cause—or effect—is an extramarital relationship by one or both marital partners. For better or worse, society tolerates extramarital relationships. That is not to say that society *condones* them, but it is clear from the treatment of such relationships in the entertainment, art, and news media, for example, that society at least tolerates them. That fact is reflected in our laws as well. State legislatures across the nation have abolished the torts of criminal conversation and alienation of affections,[2] as did Oregon in 1975. In addition, nearly all states have established no-fault marital dissolution laws.

The mutuality of the relationship at issue in this case also is significant to our analysis. There was no evidence or even suggestion of deception, coercion, overbearance, or ulterior motive on defendant's part. To the contrary, the evidence indicates that plaintiff's wife took at least equal initiative in starting and continuing the extramarital relationship. Plaintiff endeavors to distinguish this case as "much more than marital infidelity among strangers" by attempting to construct a heightened "obligation" on defendant's part to refrain from the conduct because an "association" existed between plaintiff and defendant and the church. Plaintiff's apparent point is that, because the parties knew one another socially and through the church, the outrageousness of defendant's conduct is magnified. In other words, their social friendship is a type of aggravating factor. Nothing in the record, however, reflects a fiduciary or other special relationship, nor is there anything inherent in plaintiff's and defendant's acquaintance with each other that gives rise to an obligation to exercise a greater degree of care. Furthermore, we find no other factors to distinguish this situation from other extramarital relationships arising from social settings or from the workplace. As we held in *Hetfeld,* it is not outrageous in the extreme for people to behave as they often do in

---

[2] The tort of criminal conversation is sexual intercourse with another person's spouse. The tort of alienation of affections is wrongful conduct of the defendant that is intended to cause and that actually does cause the plaintiff the loss of the affection and consortium of, most typically, the plaintiff's spouse.

commonly occurring circumstances. We recognize that marital infidelity may potentially disrupt marriages and personal lives. Nevertheless, in situations such as this one, the conduct is not *socially* intolerable and does not rise to the extraordinary level required for an IIED claim.

Plaintiff's reliance on *Spiess v. Johnson*, 89 Or App 289, 748 P2d 1020, *aff'd by equally divided court* 307 Or 242, 765 P2d 811 (1988), is misplaced.[3] In *Spiess*, the plaintiff sued a psychiatrist for IIED, among other claims, because the psychiatrist had an extramarital relationship with the plaintiff's wife. The plaintiff and his wife had agreed that she would seek marital counseling from the defendant. According to the plaintiff's complaint, the defendant psychologically manipulated the plaintiff's wife into a sexual relationship and convinced her to seek a dissolution of her marriage. The plaintiff also alleged that the defendant followed the plaintiff and his wife on their family vacations and that the defendant's motives for his actions included acquisition of the plaintiff's assets through his wife. The trial court dismissed the IIED claim for failure to state an actionable claim.

On appeal, this court addressed whether, instead of stating a claim for IIED, the complaint merely alleged disguised claims for the abolished torts of criminal conversation and alienation of affections. *Id.* at 294. The applicable standard of review limited us to the four corners of the complaint and bound us to accept all of the plaintiff's allegations as true. We held that the complaint sufficiently alleged a claim for IIED because the nature of the loss alleged (*i.e.*, intentionally inflicted severe emotional distress) was distinguishable from the loss to be redressed by the abolished torts (*i.e.*, loss of a spouse's society and companionship). Additionally, we

---

[3] Plaintiff's counsel also repeatedly suggests that, because the trial judge in this case served as the defendant's attorney in *Spiess*, his judgment may have been "influenced by his losing experience" in that case. That and other similar attacks on the trial judge are not appropriate. If counsel had a concern about the trial judge's impartiality, there were appropriate mechanisms for counsel to raise them at trial, but counsel did not do so. The timing and form of counsel's remarks on appeal render them "gratuitously disparaging comments" that we have condemned in past cases, as we do here again. *See, e.g., Castro v. Ogburn*, 140 Or App 122, 130, 914 P2d 1 (1996) (Haselton, J., concurring).

were unwilling to conclude that, as a matter of law, a reasonable jury could not find that the conduct as alleged was not outrageous. *Id.*

This case provides a more developed record from which we can evaluate the evidence than did the procedural posture of *Spiess*, where we were limited to accepting the factual allegations of the complaint as true. On review of this record, it is clear that the allegations in *Spiess* and the evidence here differ in notable respects. As we have already discussed, no fiduciary relationship existed here—either between the parties to the extramarital relationship or between the parties to this action.[4] A sexual relationship in the context of a breach of fiduciary duty might increase the degree of outrageousness of the conduct. *See, e.g., Erickson*, 99 Or App 104. And, as was argued in *Spiess*, such a situation may even raise doubts as to the consensual nature of the extramarital relationship. No similar facts or inferences are at work in this case. Here, the relationship was indisputably consensual, and no special or fiduciary relationship existed. Nor, in further contrast with *Spiess*, do the facts here suggest that defendant engaged in any harmful behavior toward plaintiff's wife or provide a basis to impute any sinister motive to defendant. Although *Spiess* was a claim for IIED in the context of facts that included an extramarital sexual relationship between the defendant and the plaintiff's wife, the factual similarities to this case end there. We decline to extend *Spiess* beyond its particular facts to the different circumstances involved in this case.

In sum, the evidence here is that defendant and plaintiff's wife agreed to enter an extramarital sexual relationship. They met a few times at her house; they continued the relationship elsewhere to some degree while they were both separated; they did so despite plaintiff's expressed wish to the contrary; and the relationship resulted in a pregnancy. Certainly, no single act shown to have been committed here was "outrageous in the extreme." *Patton v. J. C. Penney Co.,*

---

[1] Although defendant happened to be a children's pastor at the church that plaintiff and his wife attended and at which she worked, the trial court specifically ruled that no fiduciary relationship existed between plaintiff and defendant or between plaintiff's wife and defendant. Plaintiff does not assign error to that ruling on appeal.

301 Or 117, 124, 719 P2d 854 (1986). Nor were they in combination. Based on the totality of the circumstances, we conclude that, as a matter of law, defendant's conduct was not an extraordinary transgression of the bounds of socially tolerable conduct. Therefore, the trial court did not err in granting summary judgment in favor of defendant.

Affirmed.