Gregory ARLINGHAUS, Appellant,

v.

Joseph GALLENSTEIN and Roman
Catholic Diocese of Covington,
Kentucky, Appellees.

No. 2002–CA–001821–MR.

Court of Appeals of Kentucky.

Sept. 5, 2003.

William G. Knoebel, Bogucki, Knoebel &
Vice, P.S.C., Florence, KY, for Appellant.

John F. Estill, Fox, Wood, Wood & Es-
till, Maysville, KY, for Appellee Gallen-
stein.

Kurt Philipps, William J. Moran, Jr.,
Deters Benzinger & LaVelle PSC, Cincin-
nati, OH, for Appellee Diocese.

Before BARBER, COMBS, and
KNOPF, Judges.

*OPINION*

KNOPF, Judge.

Gregory Arlinghaus appeals from a sum-
mary judgment of the Kenton Circuit
Court, entered August 5, 2002, dismissing
his complaint against Joseph Gallenstein, a
Catholic priest, and the Roman Catholic
Diocese of Covington. Arlinghaus seeks
damages from these defendants for emo-
tional trauma he claims to have suffered as
a result of Gallenstein's affair with Arlin-
ghaus's wife, Donna. The trial court
ruled, correctly we believe, that Arlin-
ghaus's injury is not one for which the law
provides a remedy.

Summary judgment is inappropriate, of
course, unless the movant demonstrates
that with respect to a dispositive aspect of

352

the case there is no genuine issue of material fact.[1] Both the trial court and this Court assess such motions, not by weighing the evidence, but by reviewing the record in the light most favorable to the opposing party.[2]

The record indicates that Donna and Gallenstein first became acquainted in 1990 or 1991, when, as a teacher Gallenstein had one of the Arlinghauses' children in his class. He was assigned as an associate pastor to the Arlinghauses' parish in 1992. The Arlinghauses were active in their church and soon befriended the new parish priest. During the next few years Gallenstein was a frequent visitor in their home and occasionally joined them on family outings. In June 1995 he was assigned to a new parish, but apparently maintained his social connection with the Arlinghauses. Some time in 1996, his relationship with Donna became sexual. Their affair continued until the fall of 1997, when Donna learned that she was pregnant by Gallenstein and disclosed the relationship to her husband. Following this disclosure the Arlinghauses attempted to reconcile, but ultimately they divorced.

Gregory filed suit against Gallenstein and the Diocese in February 2000. He alleged that Gallenstein had inflicted severe emotional distress by "intentionally and recklessly undermin[ing] the Plaintiff's marriage." He also alleged that the Diocese had contributed to his distress by responding in a negligent manner when it learned of Gallenstein's behavior.

As the trial court noted, in *Hoye v. Hoye*[3] our Supreme Court abolished the common-law tort of intentional interference with the marital relation. Since *Hoye*, the general rule in Kentucky has been that engaging in consensual sexual relations, even with another's spouse, does not justify an action in tort. Such an action is inconsistent with the privacy and liberty interests of the persons consenting to the relationship.[4]

On the other hand, our courts do recognize a cause of action for the intentional or reckless infliction of severe emotional distress, often referred to as the tort of outrage.[5] Several courts, including our Supreme Court, have held that this tort provides a potential exception to the general rule just stated, that consensual sex does not provide grounds for a civil action. The exception arises when the defendant, through a special relationship with the plaintiff, owes the plaintiff an independent duty of care, the breach of which is both outrageous and severely distressing. In *Osborne v. Payne*,[6] for example, a case in which a husband sought damages from a priest who had carried on an affair with the wife while he was providing marriage counseling to the couple, our Supreme Court ruled that "the existence of a special relationship between the parties can make conduct outrageous" and further ruled that whether such a special relationship existed between the priest/counselor and the injured husband was a question for the jury. Where such a special relationship exists,

the defendant does more than just intrude into the marriage; he breaches an independent duty of care and loyalty toward the cuckolded spouse.... With-

**1.** *Steelvest, Inc. v. Scansteel Service Center,* Ky., 807 S.W.2d 476 (1991).

**2.** *Id.*

**3.** Ky., 824 S.W.2d 422 (1992).

**4.** *Id. Cf. Padwa v. Hadley,* 127 N.M. 416, 981 P.2d 1234 (App.1999).

**5.** *Craft v. Rice,* Ky., 671 S.W.2d 247 (1984).

**6.** Ky., 31 S.W.3d 911 (2000).

out such an independent duty, there is no tort of outrage.[7]

Several courts have found such a duty in the counseling relationship.[8]

 Gregory contends that his relationship with Gallenstein, the relationship between parishioner and priest, was special in this sense and that a jury should be permitted to decide whether Gallenstein's breach of that relationship was outrageous. Although we acknowledge what must be Gregory's acute sense of betrayal, we nevertheless agree with the trial court that the mere fact that a person is a priest or other clergyman does not make him legally liable to his parishioners for personal liaisons. Unlike the counseling relationship in *Osborne*, which could be deemed special apart from its religious context and thought to include independent legal duties, the relationship between parishioner and clergyman is essentially religious; its duties are not those of the civil law.[9] Clearly, it is not for the court to construe or to enforce the clergy's religious duties;[10] yet that is precisely what Gregory asks us to do. The trial court did not err by refusing Gregory's request. For the purposes of the civil law, Gallentstein's affair with Donna was no different than another person's affair would have been and does not give Gregory a cause of action for outrage.

The fact that the law does not recognize Gregory's injury also defeats his claim against the Diocese. He notes that an employer may be held liable for harms caused by its employee if it was aware that the employee posed an unreasonable risk of perpetrating the harm and yet negligently failed to prevent it.[11] He alleges that the Diocese responded negligently once it learned of Gallenstein's and Donna's affair and thus contributed to the failure of the marriage and Gregory's distress. The cause of action requires an underlying injury perpetrated by the employee. Because there was no legally cognizable underlying injury in this case, the trial court did not err by dismissing Gregory's claim against the Diocese.

In sum, we agree with the trial court that adulterous damage to a marriage is not rendered legally actionable by the fact that a clergyman and the spouse of a parishioner are the participants. Our disposition of this issue makes the parties' other contentions moot. Accordingly, we affirm the August 5, 2002, summary judgment of the Kenton Circuit Court.

ALL CONCUR.

---

7. *Padwa v. Hadley*, 127 N.M. 416, 981 P.2d 1234, 1239 (App.1999).

8. *Osborne v. Payne, supra; Figueiredo–Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (1991) (psychiatrist seduced wife during marriage counseling of couple); *Erickson v. Christenson*, 99 Or.App. 104, 781 P.2d 383 (1989) (clergy counselor of wife); *Amato v. Greenquist*, 287 Ill.App.3d 921, 223 Ill.Dec. 261, 679 N.E.2d 446 (1997) (clergy counselor of wife); *F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697 (1997) (clergy counselor of parishioner).

9. *Rosenthal v. Erven*, 172 Or.App. 20, 17 P.3d 558 (2001); *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996).

10. *Music v. United Methodist Church*, Ky., 864 S.W.2d 286 (1993).

11. *Oakley v. Flor–Shin, Inc.*, Ky.App., 964 S.W.2d 438 (1998).