MEMORANDUM *
Sohail Masood filed this action in the District Court for the Western District of Washington against his sister, Parveen Saleemi. He alleged that for some twenty-five years he provided the financial support for his mother, Mrs. Khatoon Shahood, and in 1995 purchased and rebuilt a house for her in Karachi, Pakistan. He further alleged that in 1996 or 1997, Saleemi moved in with her mother and in return for Masood providing the costs of running the household, Saleemi agreed to manage the house and make sure that Mrs. Shahood received proper care. The complaint alleges that prior to Mrs. Shahood’s death in Karachi in 2003, Saleemi misappropriated moneys intended for Mrs. Shahood and failed to provide Mrs. Shahood with necessary medical care. It further alleged that Mrs. Shahood was buried “in a non-descript graveyard in a slum on the outskirts of Karachi without recognition, customary religious observations, or respect, knowing that Mrs. Shahood’s religion forbade reburial in a proper and respectful place.”
The complaint alleged claims on behalf of Mrs. Shahood’s estate for false imprisonment, injury, and intentional infliction of emotional distress. The complaint also alleged a claim for intentional infliction of emotional distress on Masood’s behalf.
In a dispositive order entered on July 13, 2007, 2007 WL 2069853, the district court held that Masood lacked the capacity to bring this action on behalf of Mrs. Shahood, and that he had not stated a claim upon which relief could be granted under Oregon law for intentional infliction of emotional distress. We review the district court’s determinations de novo,[1] and affirm its denial of relief.
I
The district court determined that to the extent that Masood sought to assert claims on behalf of Mrs. Shahood or her estate, he lacked the capacity to do so because he had not been, and did not seek to be, appointed as a personal representative. Federal Rule of Civil Procedure 17(b) provides that capacity to sue for claims other than in the capacity of an individual “shall be determined by the law of the state in which the district court is held.” Here, the district court is located in Washington, and Washington law does not permit heirs to bring claims on behalf of a deceased without first obtaining appointment as a personal representative. See Wash. Rev.Code §§ 4.20.010, 4.20.020, and 4.20.060; see also Beal v. City of Seattle, 134 Wash.2d 769, 954 P.2d 237, 240 (1998) (“A wrongful death action must be brought by the personal representative of the decedent’s estate and cannot be maintained by the decedent’s children or other survivors.”). The district court held that Masood lacked the capacity to sue on behalf of the estate because he “does not assert that he has obtained, or is seeking, appointment as an executor, administrator, *152 or other form of personal representative under Washington law.”
On appeal, Masood does not contest that he has not sought, nor is seeking, appointment as a personal representative.[2] Rather, Masood makes two arguments. First, he asserts that under Pakistani law he automatically succeeded to his mother’s claims and therefore is entitled to bring the action in his individual capacity. Second, he argues that even if these claims are considered as having been brought in a representative capacity, the district court should have applied Washington’s conflict of law rules before determining whether Masood had the requisite capacity to bring the claim. He contends that the application of Washington’s conflict of law standard would have resulted in the court applying Pakistani law, and that under Pakistani law he automatically has standing to sue on behalf of his mother’s estate.
Masood’s arguments are not persuasive. First, we note that however Masood obtained the legal right to pursue the Estate’s claim, they are not asserted in his individual capacity. Indeed, Masood asserts a separate claim for intentional infliction of emotion distress on his own behalf. Thus, because he is asserting a claim in some type of representative capacity, Rule 17(b) requires the application of Washington law.[3]
Furthermore, Masood’s assertion that capacity cannot be determined before choice of law is contrary to Rule 17 and the concerns underlying the Supreme Court’s opinion in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Rule 17(b) provides that the capacity of an individual as a representative is determined by the law of the state in which the federal district court sits. 4 James Wm. Moore, et al., Moore’s Federal Practice § 17.20[1] (3d ed.2008). Also, a challenge to capacity must be made when the lawsuit is initiated or it may be considered waived. See id. at § 17.20[4], In addition, capacity does not affect the choice of what substantive law to apply to a case. Id. at § 17.20[5].
The distinction between capacity to sue and the applicable substantive law underlies the Supreme Court’s opinion in Van Dusen. In that case, the Court held that where a case had been transferred pursuant to 28 U.S.C. § 1404(a), the transferee court had to apply the law of the state in which the transferor court was located. The Court commented:
The Court of Appeals’ decision would grant personal representatives bringing wrongful-death actions the power unilaterally to reduce the number of permissible federal forums simply by refraining from qualifying as representatives in States other than the one in which they wished to litigate. The extent of that power is graphically illustrated by the laws of the American jurisdictions, the vast majority of which require that, as a condition of qualifying to bring suit, a foreign executor or representative must obtain ancillary appointment or perform some preliminary act.
376 U.S. at 623-24, 84 S.Ct. 805. The Court would not have been concerned with *153 the states’ capacity to sue requirements if the application of these requirements could be avoided by applying the states’ conflicts of law standards. Accordingly, the district court properly interpreted and applied Rule 17, and we affirm the district court’s dismissal of Masood’s claims brought on behalf of his mother’s estate.
Even if Masood’s Rule 17 argument had merit, he has not carried his burden of demonstrating standing under Pakistani law. Masood has filed a request for this court to take judicial notice of the Pakistani legal authorities that he submitted to the district court.[4] Nonetheless, the submitted legal authorities fail to establish clearly or eompellingly that under Pakistani law, a son automatically has the capacity to proceed in court on behalf of his deceased mother’s estate. The submitted legal authorities fail to address the distinct questions of when and how the interests of a deceased passes to an heir, and whether an heir — who allegedly inherits the deceased’s interests — must obtain some judicial recognition of his or her status in order to assert those interests in a judicial proceeding.[5] Accordingly, Masood’s failure to provide compelling legal authority to support his assertion of Pakistani law is an alternate basis on which we affirm the district court’s use of Washington law, and its dismissal of Masood’s claims on behalf of his mother’s estate. See Interpool Ltd. v. Char Yigh Marine (Panama) S.A., 890 F.2d 1453, 1458 (9th Cir.1989) (“Where no authority, or insufficient authority, is presented by the parties about foreign law, a court may conclude that the parties have acquiesced in the application of the law of the forum.”).
II
The district court granted Saleemi’s motion for summary judgment on Masood’s intentional infliction of emotional distress (“IIED”) claim because it determined that Oregon law applied and that Masood had not, and could not, allege facts sufficient to sustain an IIED claim under Oregon law. We agree.
Oregon law provides that to state a claim for IIED, the plaintiff must show that “(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant’s acts were the cause of the plaintiffs severe emotional distress, and (3) the defendant’s acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.” McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841, 849 (1995) (citation omitted). Only the third criterion is in issue on appeal.
The Oregon courts have given the third criterion a special definition. It appears that whether a complaint meets the third criterion is a legal question to be decided by the courts. The Court of Appeals for Oregon has held that “[djetermining whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law,” but that “[wjhether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances.” Delaney v. Clifton, 180 Or.App. 119, 41 P.3d 1099, 1106 (2002).
The Oregon courts have offered the following additional guidance in evaluating the third element.
*154 The Restatement (Second) of Torts and treatises use terms such as “outrageous” and “extreme” to describe conduct actionable as IIED, but the facts of decided cases convey more than adjectives do to guide our analysis of this element. Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. The setting in which the allegedly outrageous conduct occurs— for example, in a public venue or within the employment context — also can bear on the degree of offensiveness of the conduct.
Rosenthal v. Erven, 172 Or.App. 20, 17 P.3d 558, 560 (2001) (citations omitted). In addition, the Court of Appeals also commented:
[t]he relationship between the parties has particular bearing on potential characterization of the conduct as extreme or outrageous. That is so because “a defendant’s position or role vis-a-vis a plaintiff may be one that ‘imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm’s-length encounters among strangers.’ ” In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim. As this court observed some years back, “[a] ‘special relationship’ between the parties has played a role in every case in this state involving [a successful claim of IIED].” That observation appears to remain generally true.
Delaney, 41 P.3d at 1106-07 (citations omitted).
In the present case, the district court also cited a decision by the United States District Court for the District of Oregon, Hutchens v. Hutchens-Collins, No. CV-04-281-ST, 2005 WL 1801670 (D.Or. June 28, 2005). In that case, the plaintiff alleged that his mother’s granddaughter had abused his mother, diminished his inheritance, and intentionally inflicted emotional distress on him. Id. at *2. The district court found that the complaint adequately alleged intent and causation. Id. However, applying the factors set forth in Rosenthal, 17 P.3d at 560, the court held that the plaintiff had not met the third criterion. It reasoned:
Although plaintiff alleges that defendant intended to take advantage of him as a vulnerable individual, the setting in which the conduct occurred was not a public venue or within the employment context. The other factor to consider, the relationship between the parties, is perhaps the most important one in determining what type of conduct is actionable. “[A] defendant’s position or role vis-a-vis a plaintiff may be one that ‘imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm’s length encounters among strangers.’ ”
Although plaintiff and defendant are related by blood and are not strangers, their relationship imposes no fiduciary obligation and is not the type of special relationship which supports an IIED claim.
Hutchens, 2005 WL 1801670 at *3 (citation omitted). The court concluded that the facts that the defendant was related to the plaintiff and that the defendant was an attorney did not create a heightened duty *155 to the plaintiff. Id. at *3-4. The court elaborated further:
In essence, defendant’s alleged conduct is a wrongful manipulation of another’s inheritance. Needless to say, a dispute among family members surrounding the end of a relative’s life and disposition of the relative’s belongings necessarily deals with inherently emotional and stressful issues. The conduct of some family members is substantially certain to cause severe emotional distress to other family members. To allow an IIED claim under such circumstances is problematic at best. The abusive conduct must go beyond the outer limits of what a reasonable person in plaintiffs position would be expected to tolerate.
Id. at *4.
On the basis of this authority, the district court in this case concluded that there was an absence of a special relationship and that “the complaint does not plead sufficiently outrageous conduct from Mr. Masood’s vantage point.”
On appeal, Masood argues that he made a sufficient showing that Saleemi’s “acts constituted an extraordinary transgression of the bounds of socially tolerable conduct,” as required by Oregon law. He urges that his agreement with Saleemi that he would provide her with the funds to support their mother created a special relationship. He also argues that the district court incorrectly concluded that “(l)[his] claim was a third-party claim for IIED and not a first-party claim; and (2) the conduct alleged is nothing more than an ordinary familial dispute over assets which, under Oregon law, is not ‘intolerable conduct.’” Finally, Masood asserts that the existence of a special relationship is not critical to an IIED claim under Oregon law.
Although Masood’s allegations, if proved, might appear to assert “an extraordinary transgression of the bounds of socially tolerable conduct,” under Oregon law this is a term of art. This term requires that there be something special about the relationship between the plaintiff and the defendant, and that the court, not the jury, determine whether such a relationship exists.[6] Delaney, 41 P.3d at 1106-07. Here, the parties are brother and sister, and the IIED claim that was filed in August 2006 arises out of Saleemi’s treatment of their mother in Pakistan pri- or to her death in 2003. The particular allegations are unique, but the relationship is relatively common. Accordingly, because Oregon law appears to require that the court make a legal determination of what might otherwise be considered a question of fact, we agree with the district court that Masood has not, and cannot, allege the requisite relationship to sustain an IIED claim under Oregon law.
Following oral argument, pursuant to a letter filed under Federal Rule of Appellate Procedure 28(j), Masood brought the Oregon Court of Appeals’ decision in Staten v. Steel, 222 Or.App. 17, 191 P.3d 778 (2008), to the panel’s attention. Although there is language in Staten suggesting that a special relationship is not an element of the tort of IIED under Oregon law, id. at 793 n. 7, the opinion also recognizes that Oregon law requires the assertion of some special factor and that the sufficiency of the assertion may be considered by the
*156 court before the case goes to a jury.[7] Here, although Masood alleges particularly outrageous conduct by his sister, the only special factor alleged in his complaint is their relationship as siblings. Unlike in Staten, where the defendant deliberately broadcast allegedly libelous statements about the plaintiff in a small community, Masood’s claim is based on private acts that took place in Pakistan. Thus, even accepting that under Oregon law a claim of IIED may be sustained where other factors take the place of the existence of a special relationship, Masood has not alleged any such factor and, accordingly, we affirm the district court’s grant of summary judgment against Masood on his IIED claim.
Ill
We affirm the district court’s dismissal of Masood’s claims on behalf of his mother’s estate because he is not and has not sought to become the representative of the estate, he has not shown that the district court misinterpreted Rule 17, he has not shown that the district court misinterpreted or misapplied Washington law, and he has not shown that he has attained the position of representative of the estate under Pakistani law. We affirm the district court’s grant of summary judgment against Masood on his IIED claim because under the applicable Oregon law, he must show a special relationship between himself and Saleemi or some other special factor recognized by the Oregon courts. The only asserted factor, the brother-sister relationship, is not sufficient to sustain an IIED claim under Oregon law. The district court’s denial of relief to Masood is
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir.2005).

. If he had, the district court’s order should have been without prejudice to the filing of an amended complaint asserting that capacity.

. Even if for purposes of Rule 17(b), Masood were considered an individual rather than a representative, and that accordingly under Rule 17(b) the district court was required to apply the “law of the individual’s domicile,” the result would be the same. Masood is domiciled in Oregon, and he represents in his brief that Oregon, like Washington, requires that "in order to pursue claims on behalf of a decedent, a person must be appointed as administer of the estate.”

. We grant the request in a separate order filed concurrently with this memorandum disposition.

. The need for some official determination of who represents the deceased’s estate seems particularly compelling where, as here, the deceased had more than one child and the children are suing each other.

. The case cited by Masood in his reply brief, Andersen v. Atlantic Recording Corp., No. 07-CV-934-BR, 2008 WL 483313 (D.Or. Feb.19, 2008), is not to the contrary. There, the federal district court noted that under Oregon law, the plaintiff was not required to plead or prove a special relationship, but had to designate "the existence of a special relationship as a factor that ‘bear[s] upon the offensiveness of the conduct.’ " Id. at * 1.

. The Court of Appeals commented:
[Defendant] then points out that there is no evidence of a special relationship in this case and argues that the jury might have reached a different verdict if the trial court had given the proposed instruction. The difficulty with [defendant’s] argument is that, as we also stated in Delaney, evaluating the defendant’s conduct in an intentional infliction of emotional distress case is a fact-specific inquiry. It is thus not one that is subject to any particular formula or exclusive list of facts. In Delaney, we discussed the existence of a special relationship and other possible facts as part of determining whether the plaintiff had stated a claim for intentional infliction of emotional distress, not for the purpose of guiding a jury’s decision once the plaintiff had crossed that hurdle. We also made it clear that other facts could be relevant in other cases. Neither plaintiff nor [defendant] raised any issue concerning a special relationship in this case, and the record makes clear that no such relationship existed. Instruction 14 could not have helped the jury and might have confused it; the trial court did not err in refusing to give it.
Staten, 191 P.3d at 793.