Argued and submitted February 1, 2008; order of August 2, 2006, denying other defendants' original motion for attorney fees and sanctions, and order of September 6, 2006, denying other defendants' motion for leave to file amended motion for attorney fees and separate motion for sanctions, vacated and remanded; otherwise affirmed August 20, 2008, petition for review denied January 13, 2009 (345 Or 618)

Greg STATEN,
*Plaintiff-Respondent,*

*v.*

Vetta STEEL,
Jerry Franklin, Jeanette Franklin, Tiffany Gendron,
Carl Pierce, Jan Pierce, Garry Rose, Olivia Wytcherley,
Herbert Gelwick, Dorothy Sims, Carol Alf,
and Robert Falbo,
*Defendants-Appellants,*

*and*

Chuck WHITE,
Bob Rice, and Does 1-50,
*Defendants.*

Lane County Circuit Court
160515033; A133080

191 P3d 778

Brian Fahling argued the cause for appellants. With him on the briefs were Michael J. DePrimo, Stephen M. Crampton, and American Family Association Center for Law & Policy, Mississippi, and Gregory T. Lusby and Arnold, Gallagher, Saydack, Percel, Roberts & Potter, P.C.

Claud Ingram argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

BREWER, C. J.

Edmonds, P. J., concurring.

## BREWER, C. J.

Defendant Falbo appeals from a judgment based on a jury verdict for a total of $110,000 on plaintiff's claims for intentional infliction of emotional distress and invasion of privacy. Plaintiff dismissed his claims against other defendants during the trial. Those other defendants appeal from the trial court's refusal to award them sanctions or attorney fees against plaintiff and his attorney. We conclude that the trial court's actions that are the basis for Falbo's primary assignments of error are not reviewable on appeal and that none of the assignments of error that are reviewable support a reversal of the judgment against him. However, we also conclude that the trial court's failure to make findings of fact in disposing of the other defendants' motion for attorney fees and sanctions requires that we vacate its order denying that motion, as well as its order denying defendants' subsequent motion for leave to file an amended motion for attorney fees and their separate motion for sanctions, and that we remand those matters for further proceedings.

Many of the facts are undisputed; we state those that are disputed in the light most favorable to plaintiff because of the verdict in his favor. On March 16, 2005, plaintiff, his wife, and some friends went to Club 71, a bar located next to I-5 in Sunny Valley that featured nude dancing. Because he was on call for his employer, plaintiff was the designated driver and drank only soft drinks. As his group left around midnight, they encountered a number of people, including Falbo, who were opposed to nude dancing and were protesting Club 71 in the hope of shutting it down. Among other things, the protesters took pictures of the club's patrons and of the license plates of their vehicles; Falbo maintained a website on which he posted some of those pictures. Because of the protestors' location and the flashes from their cameras, which impeded plaintiff's ability to see, it was difficult for plaintiff to back his large truck down the narrow lane from the club to a place where he could turn it around. The flash from one picture that Falbo took of plaintiff while he was in the driver's seat of his truck significantly impaired plaintiff's vision, making it dangerous for him to back his truck. After that picture was taken, plaintiff got out of the truck, grabbed

Falbo's camera, threw it to the ground, and got back in the truck. A protester gave Falbo another camera, and he took another picture, again impairing plaintiff's vision. When plaintiff got out of his truck a second time some protesters grabbed him. After plaintiff's friends came to his assistance, he returned to his truck, managed to back it down the narrow road, and left. Because plaintiff's truck had a large diesel engine that was not warmed up, he could drive only at a low speed.

Falbo subsequently posted two pictures of plaintiff in the driver's seat of his truck and a picture of the truck's license plate on his website and added the following commentary:[1]

"Now when Guys get sexualy frustrated and drunk they get prone to violence which bring us to this guy who alledgedly attacked one of the protesters who took this picture after he alledgedly threaten the crowd. We don't know if he was drunk or not but he alledgedly back up more than 50 feet at a high speed. He alledgedly almost hit a man in the middle of the road who later got into the back of his alledged truck. They also got photos of the front of his alledged truck. It appeared to one witness that he didn't reconize his buddy and thought it was a protester in his path . And this lead to his alledged verbal threat to the protesters.

"SO Please be carefull .

"also check out igotyournumber and seewhosthere.com"

The posting on Falbo's website quickly became known in plaintiff's community, with the commentary being the focus of attention. Both plaintiff's wife and one of his friends who had been in the party that went to Club 71 that night pointed the posting out to plaintiff. Plaintiff believed that the posting was inaccurate and that it impugned his reputation. He therefore filed this action against Falbo and a number of other people who were involved in the protests, asserting claims for invasion of privacy by false light, intentional infliction of emotional distress, and civil conspiracy. Thereafter, Falbo posted additional commentary on his website:

---

[1] We give Falbo's statements as they appeared on the website without correcting spelling or grammar and retaining the original typography.

## "THIS JUST IN.

**I Just got word from chuck. Greg Staten alleges that, he is the guy in the truck. Greg Staten is upset, he feels that we implied that he was sexually frustrated. We thought we broke the link when we stated that 'we didn't know if he was drunk or not'. I can understand why Greg Staten would be upset with everyone at the Glendale mill thinking that Greg Staten is sexually frustrated!. So to set the record straight Greg Staten is allegedly not sexually frustrated. Chuck says that he has a strong right arm and that a sure sign of someone 'who is not allegedly sexually frustrated.' OH OK I know what you think he was implying but I'm sure he meant that woman are attracted to guys with strong right arms. (or men, we don't want to wrongfully imply that Greg Staten is a hetro-sexual) For more on Greg Staten see part of his lawsuit. lawsuit"**

The link at the end of the paragraph led to a short excerpt from plaintiff's complaint with additional commentary:[2]

"The Name of the club was removed because we don't advertise for Dick Lacey in any form.

"Well Greg, That not the way I heard it told. But I have to ask. How do you ask your wife to go with you to a nudity bar? Isn't the Grey Hound bus station entertaining enough for her? Maybe she enjoys looking at **NUDE WOMAN DANCERS ?** I don't know. You know when the news of the suit hits the Grants Pass papers a lot more people will see the web page seewhosthere.com and then will find the link to my page.

"Let me guess, Dick (AKA Larry) told you it won't cost you a thing. His lawyer would work on a contingency. Did they tell you that when you lose you will have to pay for the cost of the defendents?. I think you might want to check with a second lawyer. Or you might want to check http://www.lectlaw.com/def/c103.htm

"and http://www.lib.niu.edu/ipo/ip951121.html"

---

[2] The excerpt from plaintiff's complaint that preceded the commentary included a reference to plaintiff's wife accompanying plaintiff to Club 71.

Falbo subsequently explained that "Chuck" was a fictitious name and that Falbo was the source for all of the information in the commentary.

After learning about this additional commentary and its effect in his community, plaintiff amended his complaint to add new counts of invasion of privacy by false light and intentional infliction of emotional distress arising from that commentary. All defendants thereafter joined in a special motion to strike under ORS 31.150, asserting that the website posting constituted protected speech in connection with a matter of public interest. The trial court denied that motion. Each defendant thereafter filed a motion for summary judgment. The defendants other than Falbo asserted that they had no involvement in Falbo's Internet postings. Falbo asserted that his actions were speech that was protected under the First and Fourteenth Amendments. The trial court denied all of the summary judgment motions. During trial, the court indicated that it would dismiss the claims against the defendants other than Falbo unless plaintiff produced evidence that those defendants had aided and abetted Falbo's Internet postings. Plaintiff was unable to do so and, therefore, voluntarily dismissed his claims against those defendants. The case continued against Falbo alone, resulting in the verdict in plaintiff's favor. Falbo did not move for a directed verdict at any time, nor did he otherwise seek dismissal of any of plaintiff's claims during the trial.

In his first assignment of error, Falbo asserts that the trial court erred in denying his special motion to strike under ORS 31.150. In his second assignment of error, he asserts that the court erred in denying his motion for summary judgment. In support of both assignments, he argues that the statements on the website were speech that is protected by the First and Fourteenth Amendments. However, as we now explain, neither assignment is reviewable on appeal. We first discuss the motion for summary judgment, because the reasons why that motion is not reviewable are the foundation for the reasons why the special motion to strike is not reviewable.

█ "*Reviewability* generally involves the consideration of a variety of rulings and orders made by the court, usually

before judgment." *State v. Montgomery*, 294 Or 417, 420, 657 P2d 668 (1983) (emphasis in original). In many instances, the legislature has enacted statutes that govern the reviewability of such orders. *See, e.g., Mastriano v. Board of Parole*, 342 Or 684, 159 P3d 1151 (2007) (analyzing ORS 144.335(1), which governs the reviewability of parole board rulings). However, in other circumstances, the reviewability of trial court or administrative agency rulings is governed by judicially developed principles. *See, e.g., State v. Dominguez-Coronado*, 215 Or App 7, 12, 168 P3d 291 (2007) (unpreserved assignment of error is not reviewable by this court unless it constitutes plain error). The legislature has not addressed the reviewability of orders denying summary judgment motions; however, the appellate courts have developed principles that govern that issue.

In *Mt. Fir Lumber Co. v. Temple Dist. Co.*, 70 Or App 192, 688 P2d 1378 (1984), a property damage case, the plaintiff assigned error on appeal to the trial court's denial of its motion for summary judgment on the defendant's affirmative defense of comparative negligence. The plaintiff had not moved against that affirmative defense at trial. We held that the trial court's action was not reviewable. In explaining our decision, we first considered the situation where a court denies a motion for summary judgment on the ground that there are disputed issues of material fact, and the nonmoving party subsequently wins a verdict after a trial. In that case, we held, it is fundamentally unfair to deprive the party that prevailed after a full trial of its verdict on the ground that the court should have ruled for the other side on a record that was less complete. We concluded that refusing to review the denial of the earlier motion would not be unfair to the moving party, because that party retained its right to establish its case at the trial. *Id.* at 196-97.

We next considered the situation where the facts are undisputed, and the trial court denies the motion on the ground that the moving party is wrong as a matter of law. Even then, we held, there are persuasive reasons for refusing to review that decision after a trial on the merits. After the court denies a motion for summary judgment, the moving party still has the same right as before to establish the merits of its position at a trial of the case. The purpose of summary

judgment is to eliminate unnecessary trials when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. However,

> "[i]t is *not* the purpose of the summary judgment procedure to provide an unsuccessful movant with an alternative to a plenary trial, or with an alternative record on which to rely on appeal. After a motion for summary judgment has been denied, rightly or wrongly, a trial *is* necessary and no systematic benefit would be gained by allowing a party to rest on his denied motion rather than requiring that it participate and make its legal and factual case in that trial."

*Id.* at 198 (emphases in original). For those reasons, we refused to review the trial court's denial of the plaintiff's motion for summary judgment on the comparative negligence defense.

After *Mt. Fir Lumber Co.*, the Supreme Court modified our conclusion that a denial of a motion for summary judgment is nonreviewable in one limited respect. In *Payless Drug Stores v. Brown*, 73 Or App 90, 698 P2d 45, *rev'd and rem'd*, 300 Or 243, 708 P2d 1143 (1985), the plaintiff sought to recover a statutory penalty from the parents of a teenage shoplifter. The parents moved for summary judgment on the ground that the statute authorizing the penalty was unconstitutional. The trial court denied the motion, and the parents did not raise the constitutional issue again at the trial. On appeal from an unfavorable verdict, they assigned error to the denial of the motion for summary judgment. In our opinion, we relied on *Mt. Fir Lumber Co.* and declined to consider that assignment. On review, the Supreme Court reversed our decision because the motion related to the facial constitutionality of a statute and did not involve any aspect of the facts of the case. It remanded the case for us to decide the issue on the merits. *Payless Drug Stores v. Brown*, 300 Or 243, 708 P2d 1143 (1985).

The Supreme Court first stated that our opinion in *Mt. Fir Lumber Co.* made sense "when the decision of a case hinges on facts that are presented for determination in a trial after denial of summary judgment." *Payless Drug Stores*, 300 Or at 246. It then suggested that our position was weaker when the party moving for summary judgment argues that it

must win under the law no matter what the facts may show. The court quoted the portion of *Mt. Fir Lumber Co.* that we quoted above and then asked whether there is anything to be gained by denying the right to rest "on a purely legal contention once it has been squarely presented and rejected." *Id.* Nevertheless, the court did not dispute our holding denying reviewability when adjudicative facts were relevant to the motion for summary judgment. The issue in *Payless Drug Stores* was the facial constitutionality of a statute, not the constitutionality of applying that statute to the facts in the case or in any other case. The facial constitutionality of a statute does not depend on adjudicative facts, and, thus, evidence at trial would neither aid nor defeat the parents' contention. For that reason, the court held that the parents' motion was reviewable on appeal. *Payless Drug Stores*, 300 Or at 247-48.

■ Since *Payless Drug Stores* was decided, we have continued to apply *Mt. Fir Lumber Co.* to most denials of motions for summary judgment and, thereby, to treat those denials as not reviewable on appeal. However, we have also recognized the exception that the Supreme Court established for motions that rest on a purely legal contention that does not require the establishment of predicate facts. In order to distinguish motions that are reviewable from those that are not, we have explained that "[p]urely legal contentions are those as to which *the facts are not merely undisputed but immaterial*, such as a facial challenge to the constitutionality of a statute." *Seidel v. Time Ins. Co.*, 157 Or App 556, 560, 970 P2d 255 (1998) (emphasis added). "In other words, the legal theory underlying the motion must be that the moving party has a right to prevail on any set of facts and that *the facts, in effect, do not matter*." *York v. Bailey*, 159 Or App 341, 345-46, 976 P2d 1181, *rev den*, 329 Or 287 (1999) (emphasis added). Our understanding of *Payless Drug Stores*, thus, is that the denial of a motion for summary judgment that is based on facts, even undisputed facts, is not reviewable. *York*, 159 Or App at 346; *see also American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 372, 145 P3d 1111, *adh'd to on recons*, 209 Or App 518, 149 P3d 159 (2006), *aff'd*, 345 Or 1, 189 P3d 9 (2008); *Freeman v. Stuart*, 203 Or App 191, 194, 125 P3d 786 (2005).

■ In his motion for summary judgment, Falbo conceded that he posted the photographs and the commentary that are the basis for plaintiff's claims against him. He argued that he did so for three reasons: (1) to discourage people from patronizing Club 71; (2) to alert other community members so that they could also discourage people from patronizing Club 71 in the future; and (3) because the matters were newsworthy in and of themselves. He then argued that all of his actions were constitutionally protected expressive activities. It is apparent that the facts of what occurred and Falbo's reasons for doing what he did are fundamental to his arguments that his actions were constitutionally protected. This is not a situation in which the facts do not matter; rather, they are at the heart of Falbo's motion. For purposes of reviewability it does not matter whether the facts are, as Falbo contends, undisputed; what matters is that the facts are material. After the denial of his motion, Falbo had the opportunity by appropriate motions during trial to raise the contentions that he now makes on appeal. He did not do so. He now seeks to have us review his constitutional contentions based on the less complete summary judgment record rather than on the full record from the trial. Under our decisions in *Mt. Fir Lumber Co.*, *Seidel*, and *York*, we cannot do so. In short, the denial of Falbo's motion for summary judgment does not present a reviewable claim of error.

Falbo also challenges the trial court's denial of his special motion to strike, which was based on ORS 31.150. The legislature enacted that statute in 2001 to permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage. We set the statute out in full:

"(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice.

"(2) A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(3) A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

"(4) In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(5) If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim:

"(a) The fact that the determination has been made and the substance of the determination may not be admitted in evidence at any later stage of the case; and

"(b) The determination does not affect the burden of proof or standard of proof that is applied in the proceeding."

A defendant must file a special motion to strike within 60 days of the service of the complaint unless the trial court permits a later filing. ORS 31.152(1). The court shall award reasonable attorney fees and costs to a defendant who prevails on a special motion to strike. ORS 31.152(3).

During their consideration of this statute, legislators explained that its purpose is to provide for the dismissal of claims against persons participating in public issues, when those claims would be privileged under case law, before the defendant is subject to substantial expenses in defending against them. Audio Recording, House Committee on Judiciary, HB 2460, Apr 16, 2001, at 2:10.38 (comments of Rep Lane Shetterly and Rep Robert Ackerman), http: //www.leg.state.or.us/listn/archive/archive.2001s/HJUD-200104161625.ram. ORS 31.150 attempts to achieve that purpose by creating a special motion to strike against a claim that arises out of the exercise of the right of petition or free speech in connection with a public issue or an issue of public interest. ORS 31.150(2)(d).[3] A special motion to strike has benefits for the defendant that other pleading motions do not. Unlike most other pleading motions, it is not subject to the requirement of ORCP 21 F that the defendant consolidate it with other available motions against the complaint. ORS 31.150(1). Thus, a defendant may make a special motion to strike at the very beginning of the litigation without foreclosing subsequent motions if the special motion fails. When a defendant makes a *prima facie* showing that the plaintiff's claim arises out of a covered action, the burden shifts to the plaintiff to show that there is a probability that it will prevail on its claim. In doing so, the plaintiff must present substantial evidence to support a *prima facie* case. ORS 31.150(3). In making its decision on the motion, the trial court examines not only the pleadings but also any supporting and opposing affidavits. ORS 31.150(4). The special motion, thus, may require the plaintiff to present the factual basis for its claim at the beginning of the litigation.

---

[3] For convenience, we treat ORS 31.150(2)(a), (b), and (c) as giving specific examples of the general principle described in ORS 31.150(2)(d). We do not thereby intend to limit the application of those subsections in subsequent cases.

To date, we have discussed the statute in only one case. In *Horton v. Western Protector Ins. Co.*, 217 Or App 443, 176 P3d 419 (2008), we addressed whether the legislature intended the language in ORS 31.150 that a "special motion to strike shall be treated as a motion to dismiss under ORCP 21 A" to incorporate by reference the requirement of ORCP 21 A that a motion to dismiss be filed before a responsive pleading is filed. We concluded that the legislature so intended and that, as a consequence, the trial court had erred in failing to deny the defendant's motion to strike as untimely. In *Horton*, we quoted extensively from the legislative history of the pertinent statutory framework, including the following statement by Senator Kurt Schrader:

> " 'This bill is about nothing less than guaranteeing our basic first amendment rights for our citizens without their being afraid of intimidation by powerful interests that sometimes seem to hold sway here in the state of Oregon and in this country at this point in time. * * * It is important that we encourage citizens—that is what this is about—this is encouraging citizens to engage in their state government. * * * These Strategic Lawsuits Against Public Participation poison the mind of the average citizen and make them afraid of their own government. * * * What this bill does do is give the judge judicial discretion to decide whether or not a plaintiff's claim has merit or not. It provides for what we want, which is the speedy disposition of these frivolous threatening lawsuits that attempt to disenfranchise citizens so that we can get on with the public process. * * * The goal is to find a good solid way to protect the citizens' rights, preserve the integrity of the process, and allow our citizens to feel comfortable participating in our government.'
>
> "Tape Recording, House Judiciary Committee, Subcommittee on Civil Law, HB 2460, Apr 19, 2001, Tape 41, Side A (statement of Kurt Schrader)."

*Horton*, 217 Or App at 451-52.

██ Because it goes beyond the pleadings to examine the evidence in support of the plaintiff's claims, a special motion to strike bears many of the characteristics of a motion for summary judgment. The primary differences are that, in the

case of a motion to strike, the moving party may not need to present any evidence of its own, and the nonmoving party may need to meet a heavier burden in order to avoid dismissal. In a motion for summary judgment, the court does not weigh the evidence but must deny the motion if there is any disputed issue of material fact. The moving party, thus, must usually present some factual support for the motion. ORCP 47 C. In contrast, in a special motion to strike, the moving party must show only that the nonmoving party's claim arises out of one of the actions that ORS 31.150(2) describes. If the moving party makes that showing, which it may be able to do based on the pleadings alone, the nonmoving party then has the burden of establishing a *prima facie* case that is sufficient to show that there is a probability that it will prevail. That burden is potentially much heavier than merely establishing the existence of a disputed issue of fact. In deciding whether the plaintiff has met its burden, the trial court may need to weigh the evidence, something that it cannot do on a motion for summary judgment. *See McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 607-08, 999 P2d 1144 (2000) ("The court's role on summary judgment is not to decide whether its credulity has been strained but to determine whether there is a genuine issue of material fact."). Finally, a judgment granting summary judgment as to all parties and all claims is a final judgment on the merits, whereas a judgment of dismissal following the grant of a special motion to strike is without prejudice to the filing of a new action. ORS 31.150(1).

The foregoing distinctions, if anything, make appellate review of the denial of a special motion to strike more problematic than review of the denial of a motion for summary judgment. When we held in *Mt. Fir Lumber Co.* that the denial of a motion for summary judgment ordinarily is unreviewable, we explained that, although it might be unfair to deny a party a summary judgment to which it was entitled, it would be a greater injustice to deprive the opposing party of a jury verdict based on a more complete record. 70 Or App at 196-97. We also stated that it would be a systemic perversion to make the nonmoving party's inability to show an issue of material fact at the summary judgment stage a basis for depriving it of a judgment after it had established at a trial

not only that there actually was a genuine issue of material fact but also that it was entitled to prevail on the facts. *Id.* at 197-98. And, we stated that, "[a]fter a motion for summary judgment has been denied, rightly or wrongly, a trial *is* necessary and no systematic benefit would be gained by allowing a party to rest on his denied motion rather than requiring that it participate and make its legal and factual case in that trial." *Id.* at 198 (emphasis in original).

■ Those points apply as strongly to appellate review of a special motion to strike. It would be at least as great a systemic perversion to make the nonmoving party's inability to establish a probability of success at the very outset of the litigation a basis for depriving it of a judgment after a trial at which it had not only established a probability of success but had actually succeeded. That is especially true where, as here, Falbo made no motion at trial to test the sufficiency of plaintiff's evidence. *See, e.g., Payless Drug Stores*, 300 Or at 246 ("If the trial court is in doubt [as to whether there is a disputed issue of material fact] before the trial, there are new occasions for persuading the court when the evidence is in.").

■ The purpose of the special motion to strike procedure, as amplified in the pertinent legislative history, is to expeditiously terminate *unfounded* claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is *meritorious*. If anything, the fact that a dismissal under ORS 31.150, unlike a judgment dismissing a claim on summary judgment, is without prejudice, reinforces that conclusion. After a jury has spoken, there is no systemic benefit in requiring a new action to try the same claim to a different finder of fact on the ground that, on a different record early in the course of the first action, a motion to strike should have been granted. The erection of such a legal maze would undermine the systemic values of judicial economy and efficiency, with the only benefit being to give the defendant another bite at the proverbial apple. Nothing in the statutory text or underlying legislative history suggests that the legislature countenanced such a result. In short, we conclude that, after a trial, appellate review of the denial of a special motion to strike is available only when the motion is limited to purely legal issues and the facts, disputed or undisputed, are immaterial.

■ In this case, the facts are essential to Falbo's arguments. In asserting that his Internet postings concerning plaintiff were protected activities, he argues that his statements were mere hyperbole that must be understood in context and that they do not imply assertions of objective fact. They were, he asserts, "designed and intended to inform the readers about illegal, immoral, or harmful activities at Club 71," and were "not intended as even-handed and unbiased." He also asserts that persons like plaintiff, "who voluntarily choose to patronize a highly controversial business, and support it through monetary expenditure, invite public criticism." Those arguments are themselves characterizations of the facts; evaluating them necessarily requires evaluating what Falbo did and the context in which he did it. That is a different proposition from evaluating the facial constitutionality of a statute. The trial court's denial of Falbo's special motion to strike is not subject to review on this appeal.

The concurrence disagrees, asserting that the legislature intended that the denial of a special motion to strike be reviewable. However, the concurrence's effort to discern such an intent is unpersuasive. The provision in ORS 31.150 that "[t]he special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F" tells us nothing about whether the denial of such a motion is reviewable. Instead, it merely indicates which provisions of ORCP 21 A govern the procedure for special motions to strike. There is nothing in the text of ORCP 21 A that speaks to the reviewability of the denial of a motion under any subsection of that rule.

■ Where the denial of an ORCP 21 A motion is reviewable, it is due to the nature of the judicial decision involved, not because the particular category of motion is included under ORCP 21 A. For example, the denial of a motion to dismiss for failure to state a claim under ORCP 21 A(8) is reviewable because, like orders denying a summary judgment motion or a special motion to strike that involve purely legal issues—which also are reviewable—there is nothing to be gained by denying the right to rest "on a purely legal contention once it has been squarely presented and rejected." *Payless Drug Stores*, 300 Or at 246. Similarly, the denial of a motion to dismiss for insufficiency of service of process,

ORCP 21 A(5); lack of subject matter jurisdiction, ORCP 21 A(1); or lack of personal jurisdiction, ORCP 21 A(2), are reviewable based on ordinary judicial principles, not because the legislature has addressed the issue. Even where the disposition of such motions requires factfinding, *see* ORCP 21 A, there is nothing about the types of deficiencies underlying those grounds for dismissal that a trial on the merits could remedy or justify. For the reasons that we have explained, the same is not true of a motion that tests the sufficiency of the evidence on the merits, where the decision of a case hinges on facts that are presented for determination in a trial after denial of the motion. *See Payless Drug Stores*, 300 Or at 246. In short, it is the nature of the decision—not the statutory pigeonhole into which a category of motion is inserted—that determines whether it is reviewable in the absence of an expression of legislative intent.

Next, the concurrence observes that there are differences between the nature of a trial court's role in deciding a special motion to strike and its task in deciding a summary judgment motion. Although it is true that the former involves "weighing" the evidence, whereas the latter does not, that difference is inconsequential for present purposes. Once a jury has determined the weight of the evidence at a trial on the merits, the trial court's previous determination on a paper record that substantial evidence "to support a" *prima facie* case exists is functionally indistinguishable from a judge's determination, in denying summary judgment, that the case presents triable issues of fact. In each instance, the question of the sufficiency of the evidence is properly reviewable through the denial of a motion based on the evidentiary record at trial.

The point is confirmed by comparing federal summary judgment principles with Oregon's summary judgment procedure. In the federal system, the trial judge's role in assessing evidence adduced in a summary judgment proceeding is more "evaluative" than the function of his or her counterpart in Oregon's courts: "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 US 242,

252, 106 S Ct 2505, 91 L Ed 2d 202 (1986). However, as in Oregon, in the federal system, the denial of a summary judgment motion generally is not reviewable from a final judgment entered after a full trial on the merits. *Haberman v. The Hartford Insurance Group*, 443 F3d 1257, 1264 (10th Cir 2006); *Price v. Kramer*, 200 F3d 1237, 1243 (9th Cir), *cert den*, 531 US 816 (2000). In short, regardless of the precise nature of the trial court's role in assessing the evidence, the denial of a motion that tests the sufficiency of the evidence on the merits is not reviewable where the decision of a case hinges on facts that are presented for determination in a trial after denial of the motion. In our view, the concurrence has identified no evidence of a contrary legislative intent.

Finally, the concurrence makes two points that, frankly, support our conclusion that the denial of a special motion to strike is not reviewable. The concurrence notes that ORS 19.415(1) provides that "[u]pon an appeal from a judgment in an action at law, the scope of review shall be as provided in section 3, Article VII (Amended) of the Oregon Constitution." The first sentence of that provision, in turn, provides:

> "In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved, *and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.*"

(Emphasis added.) At the same time, the concurrence contends that the denial of a special motion to strike is unique— and therefore reviewable—because ORS 31.150 contemplates "that the trial court engage in an evaluation of the weight of all the evidence in the record—that is, the court must evaluate the evidence against a proposed finding as well as the evidence supporting it to determine whether substantial evidence establishes a *prima facie* case." 222 Or App at 49 (Edmonds, P. J., concurring). The problem that the concurrence does not address is how, in the case of the *denial* of a special motion to strike, an appellate court can review the trial court's "evaluation of the weight of all the evidence in the record" without reexamining facts that have already been tried by the jury. The related question, of course, is why the

legislature would have intended a result that runs afoul of the Oregon Constitution. We simply are not persuaded that the legislature's silence regarding the reviewability of the denial of a special motion to strike should somehow be construed as expressing the intent espoused by the concurrence, particularly in light of the constitutional prohibition on post-verdict review of the weight of the evidence.

■ In summary, the concurrence posits that, when faced with no indication of legislative intent, "it should be assumed" that the legislature intends for trial court rulings to be reviewable. 222 Or App at 46 (Edmonds, P. J., concurring). Proceeding from that premise, the concurrence concludes that the legislature intended the denial of special motions to strike to be reviewable. We proceed from a different premise: We presume that, when the legislature has not addressed the reviewability of trial court rulings, we should apply settled appellate principles to determine whether the ruling is reviewable. Having done so, we—as discussed—conclude that the denial of a special motion to strike is not subject to appellate review.

■ We turn to Falbo's assignments of error that are reviewable. In his third assignment of error, Falbo challenges the trial court's failure to give several of his requested jury instructions.[4] In order for the failure to give a proposed instruction to be erroneous, the instruction must first be correct in all respects. *Beglau v. Albertus*, 272 Or 170, 179, 536 P2d 1251-52 (1975). Even if the proposed instruction is correct, there is no error in failing to give it if the trial court's other instructions fully covered the substance of the requested instructions or if the instruction is not necessary in order to explain the particular issue or point of law to the jury. *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 251-52, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). And, even if the failure to give a correct instruction was erroneous, that failure does not require reversal unless the instructions, considered as a whole, prejudiced the party that requested

---

[4] Plaintiff argues that Falbo's exceptions to the court's instructions did not meet the particularity requirement of ORCP 59 H(2). Although Falbo's exceptions were not a model for others to follow, we conclude that they were sufficient to preserve the issues that he raises on appeal.

the instruction by creating an erroneous impression of the law in the minds of the jury that affected the outcome of the case. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998).

 For reasons of structural logic, we discuss Falbo's challenges in an order different from his briefs on appeal. We first address Falbo's challenge to the court's failure to give Instructions 22, 23, and 24, which relate to his argument that his statements amounted to constitutionally protected reports on public issues. Instruction 22 describes the role of a representative of the news media and the constitutional protection for freedom of the press. It would have instructed the jury that it

> "must decide whether [defendant] gathered information about Club 71 and its patrons with the intent to disseminate it to the public for the purpose of providing a segment of the public with information or ideas. *If this was his purpose, you must find for defendants.*"

(Emphasis added.) One obvious difficulty with Instruction 22 is that it would have required a defense verdict based solely on Falbo's purpose, without regard to whether he acted with actual malice in making false statements of fact. Even assuming that plaintiff is somehow a public figure, that proposition is inconsistent with the rule of *New York Times Co. v. Sullivan*, 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964). Where the plaintiff is a public figure and the matter involves a question of public interest, for defamation liability to attach, constitutional protections of expression require a showing of "actual malice," meaning that the defendant knew of the falsity of the statement or acted in reckless disregard of whether it was true or false. *Id.* at 279-80. Falbo cites no authority for the proposition that, where actual malice is shown in such circumstances, a purpose to inform the public nonetheless is sufficient to insulate the defendant from liability. However, the correctness of his proposed instruction depends on the soundness of that unsupported proposition. It is true that Falbo argues that his statements were hyperbole that did not imply false facts about plaintiff and thus are not within the scope of *New York Times Co.* However, in order to give that instruction, the court would have had to determine

that Falbo's characterization of his actions was correct as a matter of law. Falbo does not assign error to any ruling in which the trial court refused to determine the meaning of his statements. In short, the trial court did not err in refusing to give Instruction 22.

■ Instructions 23 and 24 discuss the federal constitutional distinctions between imposing liability for statements concerning a private figure and statements concerning a public figure. Falbo argues that, although plaintiff may have been a private figure at the time of the first postings, he became a limited public figure when he filed this civil action. Instruction 23 describes the requirements for imposing liability on a defendant for reporting about a private figure when the speech relates to a matter of public concern. Instruction 24 describes the requirements for imposing liability on a public figure in those circumstances and would have instructed the jury that, after plaintiff filed this action, he became a public figure as to statements made by Falbo concerning the action or its subject matter. It would then have instructed the jury that it could find for plaintiff only if he proved that the statements made by Falbo after the filing of the action implied objective facts and that Falbo knew that those facts were false or acted in reckless disregard of their truth or falsity.

On appeal, Falbo argues that the "trial court erred by not instructing the jury on the private/public distinction. The jury award did not distinguish between the pre- and post lawsuit postings, thereby prejudicing Falbo." The difficulty with this argument is that the verdict form did not make the distinction that Falbo describes, and he did not except to that omission or raise any issue related to it on appeal. The first question on the verdict form asked the jury whether Falbo intentionally inflicted severe emotional distress on plaintiff, causing damage to plaintiff; the second question asked whether Falbo invaded plaintiff's privacy by placing him in a false light, causing damage to plaintiff. Both questions referred to Falbo's actions in their entirety without distinguishing between his actions before and after plaintiff filed his lawsuit. On appeal, Falbo does not assert that the trial court erred by failing to instruct the jury that plaintiff was a public figure at all relevant times, nor did he request an

instruction telling the jury how to use the information in Instructions 23 and 24 when answering the questions in the verdict form. As a result, those instructions would not have assisted the jury in deciding the questions that the trial court submitted to it. If anything, the final portion of Instruction 24 could have led the jury to believe, incorrectly, that it was required to apply the rules that apply to actions by a public figure to all of plaintiff's claims, including those claims based on statements made before plaintiff filed the action. The trial court did not err in failing to give defendant's proposed instructions.[5]

Falbo also argues that the trial court erred in failing to give his requested Instruction 21, which would have informed the jury that the Oregon and United States constitutions protect speech directed at matters of public concern and that "the nude dancing offered by Club 71 was a matter of public concern." On appeal, Falbo notes that the jury expressly found that his speech was not a matter of public interest. Falbo does not challenge the court's instruction that "[m]atters of public interest or political expression that are embarrassing, insulting, or outrageous are protected by both the Constitution of the United States and Oregon,"[6] nor does he assign error to its instruction on "rhetorical hyperbole." Rather, he argues, if the trial court had instructed the jury that nude dancing is a matter of public concern, a defense verdict would have been required on all counts.

The difficulty with Falbo's argument is that Instruction 21 was both incomplete and misleading if requested Instructions 22, 23, and 24 were not given; in the absence of those instructions—which, for the reasons discussed above, should not have been given—Instruction 21 would have led the jury to believe, incorrectly, that Falbo's speech was protected and that he was therefore entitled to a defense verdict for statements about nude dancing, *even if he acted with*

---

[5] Because of that conclusion, we do not need to decide whether plaintiff became a limited public figure by filing this action.

[6] The court immediately repeated the point, instructing the jury that "[s]tatements of legitimate concern to the public or political expression are protected speech, even if it embarrasses another or are insulting and outrageous."

*actual malice.* Accordingly, the trial court did not err in failing to give Instruction 21.

Finally, Falbo argues that the trial court should have given his proposed Instruction 14 on intentional infliction of emotional distress. The instruction stated:

"The plaintiff seeks to recover damages based upon a claim of intentional infliction of emotional distress.

"The essential elements of this claim are:

"1. Defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; and

"2. Defendants engaged in outrageous conduct—*i.e.*, conduct extraordinarily beyond the bounds of socially tolerable behavior; and

"3. Defendants' conduct in fact caused plaintiff severe emotional distress.

"Facts to be considered include whether a special relationship existed between the parties; the conduct was undertaken for an ulterior purpose; whether the claimant was an unusually vulnerable individual; and the place in which the conduct occurred, whether public or private."

The statement of the elements of the tort in defendant's proposed instruction is not identical to that in *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995), and other cases, but we will assume for present purposes that it is consistent with those cases. Falbo relied on our opinion in *Delaney v. Clifton*, 180 Or App 119, 130, 41 P3d 1099, *rev den*, 334 Or 631 (2002), for the list of facts that the jury should consider. In *Delaney*, we noted that whether conduct is sufficiently extreme or outrageous to be actionable "is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." We then quoted the description in *Rosenthal v. Erven*, 172 Or App 20, 23-24, 17 P3d 558 (2001), of some of the facts that are potentially relevant to whether conduct is sufficiently extreme or outrageous to be actionable. Those are the facts that Falbo included in the last paragraph of his proposed Instruction 14.

On appeal, Falbo notes that, as we stated in *Delaney*, most successful intentional infliction of emotional distress claims have involved a special relationship between the plaintiff and the defendant. *Delaney*, 180 Or App at 131 n 7.[7] He then points out that there is no evidence of a special relationship in this case and argues that the jury might have reached a different verdict if the trial court had given the proposed instruction. The difficulty with Falbo's argument is that, as we also stated in *Delaney*, evaluating the defendant's conduct in an intentional infliction of emotional distress case is a fact-specific inquiry. It is thus not one that is subject to any particular formula or exclusive list of facts. In *Delaney*, we discussed the existence of a special relationship and other possible facts as part of determining whether the plaintiff had stated a claim for intentional infliction of emotional distress, not for the purpose of guiding a jury's decision once the plaintiff had crossed that hurdle. We also made it clear that other facts could be relevant in other cases. Neither plaintiff nor Falbo raised any issue concerning a special relationship in this case, and the record makes clear that no such relationship existed. Instruction 14 could not have helped the jury and might have confused it; the trial court did not err in refusing to give it.[8]

In sum, the trial court did not err in any of the asserted respects. We therefore affirm the judgment in plaintiff's favor against Falbo.

We turn to the dismissed defendants' requests for attorney fees under ORS 20.105(1) and sanctions under ORCP 17 D. ORS 20.105(1) requires an award of attorney fees in favor of a prevailing party when the other party has, among other things, asserted a claim for which there was no

---

[7] Of course, the existence of a special relationship is not an element of the tort, nor is one necessary to impose liability for intentional infliction of emotional distress. *See, e.g.*, *Checkley v. Boyd*, 170 Or App 721, 14 P3d 81 (2000), *rev den*, 332 Or 239 (2001); *Kraemer v. Harding*, 159 Or App 90, 976 P2d 1160, *rev den*, 329 Or 357 (1999).

[8] The proposed instruction also may constitute an impermissible comment on the evidence. "A court impermissibly comments on the evidence when it gives a jury instruction that tells the jury how specific evidence relates to a particular legal issue." *State v. Hayward*, 327 Or 397, 410-11, 963 P2d 667 (1998). Instruction 14 would have invited the jury to consider certain facts but not others in determining whether Falbo intentionally inflicted emotional distress on plaintiff.

objectively reasonable basis. ORCP 17 D authorizes an award of sanctions against an attorney who falsely certifies that, among other things, the claims in a pleading that the attorney signs are both supported by evidence and warranted by law or by a nonfrivolous argument for the extension of existing law. ORCP 17 C(3), (4); ORCP 17 D(1). On July 11, 2006, the dismissed defendants filed a consolidated motion in which they sought attorney fees and sanctions against plaintiff. On July 24, plaintiff filed objections to that motion, asserting, among other things, that some of the items that defendants had sought were not properly included in a request for attorney fees and that a motion for sanctions under ORCP 17 D needed to be separate from other motions. In response, on August 2, defendants moved for leave to file an amended motion for attorney fees, and they filed a separate motion for sanctions under ORCP 17 D. On the same day, but after defendants filed the latter motions, the trial court entered an order denying defendants' original motion for attorney fees and for sanctions. The court made no findings in the order, nor did it give any explanation of its actions. Although plaintiff did not file a response to defendants' motion for leave to file an amended motion for attorney fees, on September 6, the court entered an order denying that motion and defendants' separate motion for sanctions under ORCP 17 D. Again, the court made no findings in that order, nor did it give any other explanation of its actions.

In their fourth and fifth assignments of error, the dismissed defendants assert that the trial court erred in denying their original motion for attorney fees and sanctions under ORCP 17 D. Both assignments of error are well taken. Irrespective of whether a party expressly requests findings, a trial court must enter findings when it either grants or denies a motion for attorney fees under ORS 20.105(1) or a request for sanctions under ORCP 17 D. That requirement facilitates adequate appellate review. *Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990) (findings required under ORS 20.105); *Small v. Umatilla County*, 148 Or App 443, 444, 939 P2d 1190 (1997) (findings required under *former* ORCP 17 C, *renumbered as* ORCP 17 D (2007)). In this case, defendants' motion relied heavily on their understanding of the procedural history of the case. Based on that history, they argued

that plaintiff should have known, either before he filed this action or at some point well before he dismissed his claims against these defendants, that those claims had no objective basis in fact or in law. We cannot review the trial court's action on defendants' motion without knowing the basis for its decision, including its understanding of that procedural history. We therefore vacate the challenged order and remand for the trial court to enter appropriate findings and a new order deciding the motion based on those findings.

In their sixth and final assignment of error, the dismissed defendants assert that the trial court abused its discretion in denying their motion for leave to file an amended motion for attorney fees and their separate motion for sanctions. We consider those issues independently, beginning with the motion for leave to amend.

██ ██ ORCP 68 C(4)(b) provides that "[s]tatements and objections may be amended in accordance with Rule 23." Under ORCP 23 A, "leave [to amend] shall be freely given when justice so requires." However, "[t]he trial court has broad discretion in determining when justice requires amendment to a complaint, and its decision will not be disturbed unless it is shown that the court exceeded the bounds of its discretion." *Contractors, Inc. v. Form-Eze Systems, Inc.*, 68 Or App 124, 129, 681 P2d 148, *rev den*, 297 Or 824 (1984). Even so, that discretion is not unlimited. In evaluating whether a trial court has acted within the bounds of its discretion, we have identified four relevant factors: (1) the proposed amendment's nature and its relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendment; and (4) the colorable merit of the proposed amendment. *Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 699, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003).

We ordinarily would turn to an evaluation of defendants' assignment of error in light of those factors. The difficulty with doing so in this case is that, as previously explained, we cannot ascertain the grounds on which the trial court denied defendants' original motion for attorney fees and sanctions. If, in accordance with certain of plaintiff's objections, the trial court denied that motion on its merits,

the proposed amendment would not have availed defendants. If, on the other hand, the court denied that motion merely because it improperly joined requests for attorney fees and sanctions, in ruling on defendants' motion for leave to file an amended motion for attorney fees the court would have been required to exercise its discretion based on the factors identified above. Because we cannot discern the basis for the trial court's ruling, and in light of our disposition of defendants' fourth and fifth assignments of errors, we vacate the trial court's order denying defendants' motion for leave to amend their motion for attorney fees.

The court's denial of defendants' separate motion for sanctions must be vacated for the same reason explained in our resolution of defendants' fifth assignment of error. Any order disposing of a request for sanctions under ORCP 17 must comply with ORCP 17 D. *Small*, 148 Or App at 444. The trial court's order of September 6, like its earlier order, did not comply with that requirement. Accordingly, it must be vacated.

Judgment against Falbo affirmed; order of August 2, 2006, denying other defendants' original motion for attorney fees and sanctions, and order of September 6, 2006, denying other defendants' motion for leave to file amended motion for attorney fees and separate motion for sanctions, vacated and remanded; otherwise affirmed.

**EDMONDS, P. J.,** concurring.

I concur with the majority's ruling that the trial court's failure to make findings renders its ruling on the attorney fees and those issues associated with the request for attorney fees not subject to meaningful review and that remand on those issues is necessary. I concur also with the result reached by the majority on defendants' other assignments of error but would reach that result as to defendant Falbo's first assignment of error on a different basis.[1]

The majority exercises its discretion not to review Falbo's first assignment of error by relying on reasoning first

---

[1] Defendants' second assignment of error is in regard to the trial court's denial of their motion for summary judgment. I agree with the majority's reasoning regarding reviewability as it pertains to that assignment.

employed by this court in *Mt. Fir Lumber Co. v. Temple Dist. Co.*, 70 Or App 192, 688 P2d 1378 (1984), with regard to the reviewability of the denial of motions for summary judgment.[2] We reasoned in *Mt. Fir Lumber Co.* that it would be fundamentally unfair to deprive a party that prevailed after a full trial of its verdict on the ground that the court should have ruled for the other party on a less complete record. The majority applies that reasoning to ORS 31.150 to 31.155:

> "After a jury has spoken, there is no systemic benefit in requiring a new action to try the same claim to a different finder of fact on the ground that, on a different record early in the course of the first action, a motion to strike should have been granted. The erection of such a legal maze would undermine the systemic values of judicial economy and efficiency, with the only personal benefit being to give the defendant another bite at the proverbial apple. Nothing in the statutory text or underlying legislative history suggests that the legislature countenanced such a result. In short, we conclude that, after a trial, appellate review of the denial of a special motion to strike is available only when the motion is limited to purely legal issues and the facts, disputed or undisputed, are immaterial."

222 Or App at 32.

There are two potential sources of the majority's authority to deny reviewability of Falbo's first assignment of error. One source is the legislature; the other source is the court's inherent authority under Article VII (Amended) of the Oregon Constitution. The legislature has chosen not to enact any express limitations on reviewability as part of ORS 31.150 to 31.155. The majority and I draw conflicting inferences from the legislature's silence. As I understand the majority's position, the legislature's silence regarding reviewability creates a vacuum in which it is permissible for this court to exercise its inherent authority to deny review for purposes of judicial economy. If, in fact, the legislature intends that a denial of a motion under ORS 31.150 be reviewable, the majority would agree that the exercise of the inherent authority of this court to deny review would create a

---

[2] *See also Payless Drug Stores v. Brown*, 73 Or App 90, 698 P2d 45, *rev'd and rem'd*, 300 Or 243, 708 P2d 1143 (1985).

separation of powers problem under the constitution and that this court's exercise of its inherent authority would not be constitutionally permissible. Thus framed, the determinative issue is whether or not the legislature intended that the denial of a motion made under ORS 31.150 be reviewable on appeal to this court.[3]

As noted above, ORS 31.150 to 31.155 is not encumbered by any express limitations as to review. Generally, it should be assumed that the legislature intends that rulings made by trial courts concerning statutory procedures are subject to appellate review unless the legislature provides otherwise. To adopt a contrary notion would require the legislature to specifically provide for appellate review as part of every statutory procedure that it enacts. A survey of Oregon statutes supports that assumption and demonstrates that the legislature knows how to limit appellate review when it wants to. *See, e.g.*, ORS 138.050 (limiting appellate review regarding pleas of guilty or no contest). Had the legislature intended that the well-established rule regarding the reviewability of the denial of motions for summary judgment be extended to motions under ORS 31.150 to 31.155, it could have easily expressed that intention in the above statutes (particularly in light of the long-standing precedents of this court interpreting the provisions of ORCP 47).

Indeed, ORS 31.150(1) expressly provides that a special motion to strike shall be treated as a motion to dismiss under ORCP 21 A and not as a motion under ORCP 47: "The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F." The denial of an ORCP 21 A motion to dismiss is reviewable after a defendant does not prevail at trial. *See, e.g, Burden v. Copco Refrigeration, Inc.*, 339 Or 388, 121 P3d 1133 (2005) (upholding the trial court's denial of the motion to dismiss). The legislature's provision in ORS 31.150(1), that motions under the statute are to be treated as a motion to dismiss under ORCP 21 A, also suggests that the reviewability of rulings under ORS 31.150 to 31.155 is contemplated to

---

[3] There is no helpful legislative history regarding this issue. Essentially, both the majority and I are left to discern what the legislature would have intended, had it considered this issue.

be no different than the reviewability of rulings under ORCP 21 A.

Moreover, in enacting ORS 31.150, the legislature expressly exempted ORS 31.150 to 31.155 from the effect of ORCP 21 F.[4] In other words, in enacting ORS 31.150 to 31.155, it is apparent that the legislature intended to incorporate only particular provisions of ORCP 21. Presumably, the legislature was aware that rulings under ORCP 21 A are subject to appellate review. Had the legislature intended that the denial of a motion under ORS 31.150 not be reviewable, it could have expressly said so, just as it excepted ORCP 21 F from the provisions of ORS 31.150. Instead, the majority's reasoning impermissibly "inserts what has been omitted" into ORS 31.150. *See* ORS 174.010.[5] To illustrate, the majority interprets ORS 31.150(1) to include the provision that "*the denial of a motion to strike shall not be reviewable*" when that language does not appear in the statute.

Also, the majority's holding is at odds with the general authority granted to appellate courts by the legislature to review claims of error arising out of the adjudication of legal actions. There are any number of statutory provisions that provide for procedures or claims created by the legislature. These provisions, except when expressly limited by the legislature, are subject to the general provisions of ORS chapter 19 pertaining to appeals. For example, ORS 19.415(1) provides that "[u]pon an appeal from an action at law, the scope of review shall be as provided in section 3, Article VII (Amended) of the Oregon Constitution." ORS 19.415(2) provides that "[n]o judgment shall be reversed or modified

---

[4] ORCP 21 F provides, in part:

"If a party makes a motion under this rule, except a motion to dismiss for lack of jurisdiction over the person or insufficiency of summons or process, but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subsection G(3) of this rule on any of the grounds there stated."

[5] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

except for error substantially affecting the rights of a party." A denial of a motion under ORS 31.150 is a ruling in "an action at law," and ORS 31.150 to 31.155 afford defendants a substantial right to obtain a dismissal of certain kinds of claims.

Finally, using the rationale of *Mt. Fir Lumber Co.* as an indicator of legislative intent is problematic when the procedure in ORS 31.150 to 31.155 is compared with the procedure embodied in ORCP 47. The majority believes that *Mt. Fir Lumber Co.* is an example of this court's exercise of its inherent authority to fill a vacuum left by the legislature's failure to direct that review of the denial of motions for summary judgment occur. But a careful reading of *Mt. Fir Lumber Co.* demonstrates that the court did not undertake to analyze whether the review of the denial of summary judgment motions was consistent with the legislature's intent. Rather, the court's reasoning borrowed extensively from *Bell v. Harmon*, 284 SW2d 812 (KY 1955), and its reasoning based on federal appellate court decisions. 70 Or App at 197-98. At the core of these decisions is the understanding that no right of a party is substantially affected by the denial of a summary judgment motion because the unsuccessful movant will have the procedural opportunity to raise the same legal issues during trial. But an unsuccessful movant under ORS 31.150 to 31.155 does not have a similar opportunity, as explained more fully below.

ORS 31.150(3) provides that the defendant has the initial burden of "making a *prima facie* showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2)" of the statute. If the defendant satisfies that burden, then the burden shifts to the plaintiff "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." If the plaintiff is able to carry the burden, the court is required to deny the motion; if the plaintiff is unable to carry that burden, then "[u]pon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice." ORS 31.150(1). In comparison, the grant of a summary judgment under ORCP 47 is proper when there is no genuine

issue of material fact and the movant is entitled to prevail as a matter of law. Under the procedure in ORS 31.150 to 31.155, a plaintiff has the opportunity to refile in the event that the plaintiff acquires additional evidence necessary to establish a *prima facie* case. That procedure is unlike a summary judgment procedure where, if the motion is granted, a preclusive judgment results.

There are other differences between the procedures. The words "substantial evidence" are not defined in ORS 31.150. However, those words are defined in other Oregon statutes, such as ORS 183.482(8)(c). That statute provides that "[s]ubstantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." Presumably, the legislature intended the words "substantial evidence" in ORS 31.150 to have the same meaning. The statute also contains the words *"prima facie* case," a term of legal art that is commonly defined as "[a] party's production of enough evidence to allow the fact-trier to infer the fact in issue and rule in the party's favor." *Black's Law Dictionary* 1228 (8th ed 2004). Presumably, the legislature intended the words *"prima facie"* in the statute to connote the legal elements of a claim that is governed by ORS 31.150(2) in connection with the evidentiary standard of "substantial evidence."

What then distinguishes ORS 31.150 from other provisions in Oregon law that govern the pretrial disposition of civil claims is that the standards of "substantial evidence" and *"prima facie* case" in ORS 31.150 contemplate that the trial court engage in an evaluation of the weight of all the evidence in the record—that is, the court must evaluate the evidence against a proposed finding as well as the evidence supporting it to determine whether substantial evidence establishes a *prima facie* case. *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990) (interpreting the words "substantial evidence" for purposes of ORS 183.482(8)(c)). Thus, under the procedure contemplated by ORS 31.150, a court is required to consider conflicting evidence in order to make the determination of whether a reasonable factfinder could find that the plaintiff has proved a *prima facie* case.

Those differences in the procedures under ORS 31.150 when compared to other procedures like ORCP 47 assist in understanding why the legislature would have contemplated that the denial of a motion under ORS 31.150 is reviewable. Essentially, the procedure under ORS 31.150 affords defendants a procedural right to an early dismissal based on judicial factfinding and the failure of the plaintiff to prove a *prima facie* case. An unsuccessful movant under ORS 31.150 has no subsequent opportunity to test the sufficiency of the plaintiff's evidence under the standards imposed by ORS 31.150, unlike an unsuccessful movant under ORCP 47 who has additional opportunities to reassert the same legal challenge to the plaintiff's evidence under ORCP 60 and ORCP 63.[6] Providing an unsuccessful movant in a summary judgment proceeding with the right of review creates a procedural redundancy in opportunities to obtain a preclusive dismissal of an action at law, a result that the legislature likely would not have contemplated. On the other hand, because an unsuccessful movant in an ORS 31.150 proceeding has no subsequent opportunity to challenge the plaintiff's *prima facie* case in light of conflicting evidence, it is more likely than not that the legislature intended that a ruling on such motion be reviewable on appeal whether the motion is allowed or denied.

The majority disagrees. In part, it asserts that

"[t]he problem that the concurrence does not address is how, in the case of the *denial* of a special motion to strike, an appellate court can review the court's 'evaluation of the weight of all the evidence in the record' without reexamining facts that have already been tried by the jury. The

---

[6] Under ORCP 47, 60, and 63, the court must draw all reasonable factual inferences in the favor of the nonmovant. In contrast, the court under ORS 31.150 must take into account conflicting evidence. A comparison with ORCP 54 B(2) illustrates the point. Unlike ORCP 47, 60, and 63, that rule authorizes trial courts, when acting as the trier of fact in *an action tried to the court without a jury*, to grant an involuntary nonsuit on the basis of the insufficiency of the evidence and to enter a judgment with or without prejudice. Under ORCP 54 B(2), the standard of review when the judgment dismissing the complaint is without prejudice is whether the plaintiff has by its evidence established a *prima facie* case. *Gearhart v. Emplment Div.*, 99 Or App 601, 604, 783 P2d 526 (1989), *rev den*, 310 Or 70 (1990). ORCP 54 B(2) avoids constitutional implications regarding the right to a jury trial because it is limited to actions tried to a court without a jury. ORS 31.150 has no such restriction.

related question, of course, is why the legislature would have intended a result that runs afoul of the Oregon Constitution."

222 Or App at 35-36 (emphasis in original). With respect, the majority's reasoning proves too much.

Article VII, section 3, of the Oregon Constitution contains two substantive provisions: In actions of law, it provides that the right of trial by jury "shall be preserved," and that "no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." The legislature's enactment of ORS 31.150 to 30.155 brings into play the presumption that every statute that it enacts is presumed to be constitutional, *Adm. Vets. Affairs v. U. S. Nat. Bank*, 191 Or 203, 211, 229 P2d 213 (1951), and the understanding that the overlap of judicial and legislative powers regarding civil procedures arises from the legislative police power to protect the public welfare by promoting the efficient and impartial administration of justice. *Sadler v. Oregon State Bar*, 275 Or 279, 286, 550 P2d 1218 (1976). If the legislature had really been concerned that an appellate court's exercise of review over the denial of an ORS 31.150 motion would be unconstitutional because the process under the motion contemplates an appellate court reexamining a fact tried by a jury, it surely would have been concerned about whether the right to trial by a jury in an action at law guaranteed by section 3 is short-circuited by the grant of an ORS 31.150 motion. It is more likely that the legislature perceived ORS 31.150 as an appropriate exercise of its police powers and that it did not engage in the constitutional analysis attributed to it by the majority.

For all of the above reasons, I would hold that, inasmuch as the legislature has undertaken the effort through a special statutory procedure in ORS 31.150 to afford a unique procedural right to defendants in addition to the other existing procedure rights, it also intended for defendants to have the opportunity for appellate review in the event that a trial court incorrectly denied a motion made under the statute. Consequently, the majority cannot limit reviewability of such rulings through the exercise of its inherent authority without encroaching on the authority of the legislature. It follows that

I would not apply the rationale in *Mt. Fir Lumber Co.* to ORS 31.150 and that I would reach the merits of defendants' first assignment of error.

With regard to defendants' first assignment of error, the trial court ruled that defendants had not met their burden of proof under the statute. The court reasoned that

"[p]laintiff's sexuality and lawful activities are not of public interest. Plaintiff is a private individual; he is not a public figure in any sense.

"The fact that Club 71 offers nude dancing may be of public interest, and if Defendants had limited their statements to Club 71 in general, or the patrons of Club 71 in general, those statements would probably be of public interest. However, once Defendants made Plaintiff and Plaintiff's lawful activities the subject of their statements, those statements can no longer be characterized as such.

"* * * * *

"However, Plaintiff did not bring this action regarding the existence of Defendants' website in general, or to protest Defendants' views. If Defendants had limited themselves to expressing their displeasure over nude dancing at Club 71, even with an admission that they intended to put the club out of business, their expressive activity would likely have been protected. However, Defendants targeted Plaintiff specifically and by name. They posted their activity beyond the bounds of joint expressive activity."

On appeal, defendants argue,

"Even assuming, arguendo, that such comments were directed at [plaintiff], they were not actionable under the facts of this case because they constituted rhetorical hyperbole made in the heated, ongoing exchange of public debate on issues of public interest."

Plaintiff responds by adopting the trial court's reasoning in that respect.

"Neither are Defendants' statements hyperbole or exaggeration. To characterize Plaintiff specifically as sexually frustrated, drunk and prone to violence is not rhetorical hyperbole or exaggeration. If Defendants' comments had been directed generally at patrons of Club 71, this argument might be persuasive. Coupled with a photo of Plaintiff's face, it is not."

Defendants' argument is apparently premised on the proposition that by choosing to patronize a business featuring nude dancing, plaintiff made himself a public figure in the public debate regarding nude dancing establishments. But defendants' argument is inconsistent with the Oregon Supreme Court's characterization of who is a public figure for purposes of constitutionally protected expression. In *Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), the court discussed that issue for purposes of defamation and libel claims. The plaintiff was a well-known Appaloosa horse trainer. He brought an action against racehorse owners who had terminated him from their employment and then had published defamatory statements as to the performance of his work duties. At the time, among those interested in Appaloosa horse racing, a controversy existed regarding rules and training practices. The defendants urged that the plaintiff was a public figure and thus must accept the consequences of his involvement including the risk of closer public scrutiny than otherwise might be the case if he were a private figure. The court, however, rejected that argument, observing,

> "There was, however, no evidence that plaintiff had attempted in any way to influence that controversy or that he had taken any public part in it whatsoever. Until the statements which are the subject of this case were made, the only publicity which plaintiff had received, so far as the record shows, was attributable solely to and concerned only his success as a trainer. There was no showing he had voluntarily engaged in any activities * * * nor had he been engaged in any public controversy. For purposes of this case, he is entitled, under the applicable federal law, to whatever protection the state has chosen to afford to the reputations of private persons."

286 Or at 116-17.

The reasoning in *Wheeler* informs the correct result in this case. On the facts before the trial court at the time of the ORS 31.150 motion, plaintiff had not made himself into a public figure or inserted himself in a public controversy merely by patronizing Club 71.[7] It follows that the trial court

---

[7] *See also Bank of Oregon v. Independent News*, 298 Or 434, 443, 693 P2d 35, cert den, 474 US 826 (1985) (explaining that, in *Wolston v. Reader's Digest Ass'n Inc.*, 443 US 157, 167, 99 S Ct 2701, 61 L Ed 2d 450 (1979), "the Court held that merely because events involving a private individual attract public and media attention does not transform that private individual into a public figure").

ruled correctly when it held that defendants' statements placing plaintiff in a false light were not protected expression made during a debate on an issue of public concern.[8]

For the above reasons, I concur in the majority's result.

---

[8] Plaintiff also argues that, had defendants' motion under ORS 31.150 been granted, it would have deprived him of his right to a jury trial in violation of Article I, section 17, of the Oregon Constitution under the holding in *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 643 (1999). Because I would resolve the assignment of error on subconstitutional grounds, I would not reach that issue.